

ER
$400

# UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF PENNSYLVANIA

**KUTAK ROCK LLP**
Michael T. McDonnell, III (ID: 60111)
1760 Market St. - Suite 1100
Philadelphia, PA 19103
(215) 299-4384

*Attorneys for Plaintiff*
*MESA Underwriters Specialty Insurance*
*Company*

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY
40 Wantage Avenue
Branchville, NJ 07890

       Plaintiff

    v.

MELQUIADES COSTA GOIS
2449 Hartel Ave, Apt. A.
Philadelphia, PA 19152

and

ANA PAULA BOSCARIOL
2449 Hartel Ave, Apt. A.
Philadelphia, PA 19152

and

DSB HOLDING COMPANY, LLC
3705 Falls Circle
Philadelphia, PA 19129

And

BORKSON PROPERTIES, LLC
3900 Ford Road
Philadelphia, PA 19131

       Defendants

**Case No.** 18 - 3364

FILED
AUG 08 2018
KATE BARKMAN, Clerk
By_____ Dep. Clerk



## DECLARATORY JUDGMENT COMPLAINT

Plaintiff, Mesa Underwriting Specialty Insurance Company ("MUSIC"), by and through its counsel, Kutak Rock LLP, brings this action for declaratory relief and hereby files this Complaint and avers as follows:

### PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff, MUSIC is an excess and surplus line insurer issuing general liability insurance. MUSIC is a citizen of the State of New Jersey with its principal place of business located at 40 Wantage Avenue, Branchville NJ 07890.

2.      Defendant, Melquiades Costa Gois (hereinafter "Gois"), is an adult individual and citizen of the country of Brazil residing therein, at all times material hereto, at 2449 Hartel Ave, Apt. A., Philadelphia, PA 19152

3.      Defendant, Ana Paula Bascariol, is an adult individual and citizen of the country of Brazil residing therein, at all times material hereto, at 2449 Hartel Ave, Apt. A., Philadelphia, PA 19152.

4.      Defendant, DSB Holding Company, LLC ("DSB Holding"), is a corporation duly incorporated, organized, operating and/or existing pursuant to the laws of the Commonwealth of Pennsylvania with its registered office address at 3705 Falls Circle, Philadelphia, PA 19129.

5.      Defendant, BORKSON PROPERTIES, LLC ("Borkson"), is a corporation duly incorporated, organized, operating and/or existing pursuant to the laws of the Commonwealth of Pennsylvania with its registered office address at 3900 Ford Road, Philadelphia, PA 19131.

6.      MUSIC brings this declaratory judgment action pursuant to 28 U.S.C. §§ 2201 and 2202. An actual controversy within the meaning of 28 U.S.C. § 2201 exists between the parties regarding insurance coverage afforded under the Policy for the Underlying Action.

2

7.    Jurisdiction of this Court is based upon 28 U.S.C. § 1332 as plaintiff and defendants are citizens of different states and countries and the amount in controversy exceeds $75,000.

8.    The Court may maintain personal jurisdiction over defendant because defendants' contacts with this State and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice.

9.    Pursuant to 28 U.S.C. § 1391, venue is properly laid in this district because a substantial part of the transactions and issues giving rise to plaintiff's claims occurred in this judicial district.                                                              \

10.    This Court has personal jurisdiction over the defendants because they reside in the Commonwealth of Pennsylvania and this action arises out of activities in the Commonwealth of Pennsylvania.

11.    All necessary and indispensable parties have been joined in this litigation.  Gois and Boscariol have been joined for these purposes.

**THE SUBCONTRACT AGREEMENT**

12.    On June 5, 2015, Contractor Borkson Properties, LLC ("Borkson"), on behalf of itself and owner DSB Holdings, LLC ("DSB") entered into a construction subcontract with an independent contractor New Life Contractors ("New Life"). (See Exhibit "A")

13.    The Project ("the Project") that was the subject of the independent contract was located at, or around 327 East Allen Street, Philadelphia, PA.

14.    The Project was intended to consist of five four story condominium buildings consisting of 20 units at the addresses of 319-327 East Allen Street.

15.    New Life was employed to provide carpentry and framing services at the Project. This included installing interior partitions and exterior walls and building envelope wrap on the Project ("the Subcontract Agreement").

3

16.     New Life employed its own employees and additionally entered into its own sub-subcontractor agreement with Expert Construction Services ("Expert") to execute its obligations under the New Life Subcontract Agreement ("the framing parties").

17.     On or about June 23, 2015 the Project was in the initial stages. New Life and its sub-subcontractor Expert had framed four stories of one of the buildings occupying the address 327 East Allen Street. The side walls were mostly sheathed with fire-resistant sheathing called Densglass.

18.     In addition, the framing parties had also framed out the first floor decking for buildings 321-325 with limited first floor framing in place on top of the foundation slab. The framing parties had not started framing at building 319 East Allen Street.

19.     On June 23, 2015 Melquiades Costa Gois ("Gois") was employed by New Life as a framing carpenter on the Project working during that day on the second story inside building 327 East Allen Street.

### THE WINDSTORM, ACCIDENT AND LAWSUIT

20.     At the end of the work day when Gois and others were finishing up for the day, a sudden violent storm developed rapidly with extraordinarily high winds in excess of 60-70 mph. The storm caused the failure of the framing structure and partial failure of floors 3 and 4.

21.     As a consequence of the failure ("the Accident"), Gois, who at that time was on the second floor, was captured by a portion of the building and sustained bodily injury.

22.     On or about May 4, 2016, Gois and his wife Ana Paula Boscariol ("Boscariol") filed a Complaint in the Philadelphia Court of Common Pleas docketed 1600500584 against Borkson and DSB, and others alleging that they were liable for the injuries sustained in the Accident.

23.     On or about June 16, 2016 Gois and Boscariol filed an Amended Complaint, a copy of which is attached as Exhibit "B".

4

## THE MUSIC POLICY

24.     On or about July 29, 2015, MUSIC received first notice of the underlying Complaint and issued its first reservation of rights under MUSIC policy MP0037004000293 ('the Policy") which provides general liability coverage for both Borkson and DSB as named insureds with limits of liability of $1,000,000 per occurrence with an effective date of October 30, 2014 through October 30, 2015 and assigned a claim number of 115888-01. (See Exhibit "C")

25.     MUSIC has provided both Borkson and DSB a defense to the Amended Complaint subject to certain reservations of rights that were first asserted in July of 2015 and under which the defense has been conducted up to the date of the filing of the instant declaratory judgment action.

26.     Relevant for purposes of the duty to indemnify under the Policy, MUSIC has specifically asserted a complete coverage defense to the claims asserted against both named insureds based on the application of the MUSIC Endorsement entitled "Limited Coverage for Contractors and Employees (General Liability) and identified in the Policy by the Form no. MUS 01 01 20007 1013. ("Independent Contractor Employee Exclusion")

27.     The MUSIC Independent Contractor Employee Exclusion provides as follows:

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
**Limited Coverage for Contractors and Employees** (General Liability)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

A.    SECTION 1 – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE,
      2.    Exclusions, e is deleted and replaced as follows:

      This Insurance does not apply to:
      e.    Employer's Liability
            "Bodily Injury" to:
            (1)    An "employee", "temporary worker", "leased employee", or independent contractor of the insured or any additional insured or employee of any independent contractor arising out of and in the course of:
                  (a)    Employment by the insured or any additional insured or independent operator
                  (b)    Performing duties related to the conduct of the insured or any additional insured's business; or
                  (c)    Arising out of the injured party's employment; or

5

     (2)    A fellow "employee", "temporary worker", "leased employee", or independent contractor of the insured or any additional insured arising out of the course of such employment when the insured is an "executive officer" of such employer; or

     (3)    The spouse, children, parent, brother or sister of that fellow "employee", "temporary worker", "leased employee", or independent contractor as a consequence of Paragraph (1) above.

     This exclusion applies:

     (1)    Whether an insured may be liable as an employer or in any other capacity;

     (2)    To any obligation to share damages with or repay someone else who must pay damages because of the injury; or

     (3)    To any liability assumed under any contract or agreement.

28.    It has been established in the litigation that Gois was an employee of New Life and was injured in the course and scope of New Life's employment. (See Deposition attached as Exhibit "D".) This employment was in furtherance of the business of both Borkson and DSB.

29.    Pursuant to the terms and conditions of the Independent Contractor Employee exclusion, no coverage exists under the Policy for Borkson and DSB as the Policy does not cover bodily injury to an employee of any independent contractor arising out of and in the course of his employment related to the conduct of the business of the insured.

**COUNT I**

**MUSIC V. DSB HOLDING COMPANY, LLC AND BORKSON PROPERTIES, LLC**

**DECLARATORY RELIEF**

30.    Plaintiff MUSIC incorporates by reference the preceding paragraphs of this Declaratory Judgment Complaint as if same were set forth herein in full.

31.    A controversy exists between the parties concerning their respective rights under the subject Policy.

32.    No coverage exists for Borkson and DSB by virtue of the Independent Contractor Employee Exclusion contained in the Endorsement identified in ¶26 above.

33.    By reason of the foregoing, a Declaratory Judgment is both necessary and proper in order to set forth and determine the rights, obligations and liabilities that exist between the parties in connection with the aforementioned Policy.

WHEREFORE, Plaintiff MUSIC requests the Court to enter judgment against DEFENDANTS as follows:

(a)     Declaring and establishing the rights and other legal obligations of MUSIC and Borkson and DSB arising out of the aforesaid Underlying Action;

(b)     Declaring that the liability alleged against Borkson and DSB in the Underlying Amended Complaint, or generally in the Underlying Action, is not covered by and/or is excluded from coverage under the Policy.

(c)     Declaring that MUSIC is not required to provide coverage, indemnification or a defense beyond the date of any Order entered here to Borkson and DSB for the claims and liability in the Underlying Complaint, or generally in the Underlying Action.

(d)     Declaring that neither Borkson nor DSB is entitled to insurance coverage, indemnification or defense costs from MUSIC under the Policy for the claims and liability alleged against them in the Underlying Complaint, or generally in the Underlying Action.

(e)     Awarding such other and further relief as the Court deems appropriate under the circumstances.

Respectfully submitted,

Date: August 7, 2018

MICHAEL T. MCDONNELL III
(ID: 60111)
KUTAK ROCK LLP
1760 Market St., Suite 1100
Philadelphia, PA  19103
(215) 299-4384
Michael.McDonnell@KutakRock.com

*Attorney for Plaintiff*
*Mesa Underwriters Specialty Insurance*
*Company*

# Exhibit "A"

Subcontractor Insurance and Indemnification Agreement

Contractor: Dan Borkson, DBA Borkson Properties

Owner: DSB Holdings Company

Subcontractor: New life construction/contractors

Contract Price: $ 103, XXX.ºº/100

Labor/Services: Framing

Effective Date: 6-5-15

Expiration Date: 9-5-15

    This Agreement has been made on the above referenced effective date between Contractor, and Subcontractor in consideration for labor and services being performed by Subcontractor, as referenced above, and the Contract Price, also referenced above, being paid by Contractor.

Section I. Statement of Work:

From time to time, Subcontractor may provide services to Contractor. In addition to the terms and conditions negotiated by the parties for particular projects, Contractor and Subcontractor hereby agree that the terms and conditions of this Subcontractor Agreement (the "Agreement") shall apply whenever Subcontractor provides services to Contractor.

Section II- Indemnification:

1. To the fullest extent permitted by law, the subcontractor agrees to defend, indemnify, and hold harmless the contractor, the owner, and their agents, servants, and employees, from and against any and all claims, damages, losses, costs, and expenses of any kind, including but not limited to attorneys fees, incurred by reason of any liability, for damage because of bodily injuries, including death resulting from such injuries, and/or property damage to real and personal property of any kind whatsoever, sustained by any person or persons, whether employees of the subcontractor or otherwise, caused by, resulting from, arising out of or occurring in connection with the performance of the work provided for in this contract, together with any change orders or additions to the work included in the contract.

2. The subcontractor agrees that the obligation to defend, indemnify and hold harmless, as described above, exists whether such injuries to persons or damage to property are due, or are claimed to be due, to the negligence of the contractor or the owner, or the agent, servants and employees of the contractor and owner, or other subcontractors, excepting from the foregoing the sole and complete negligence of the contractor.

3. The subcontractor agrees that the obligation to defend commences when a claim is made against the owner and/or contractor, even if the subcontractor disputes its obligation to indemnify and hold harmless. The defense shall be provided through counsel chosen by the contractor and/or the owner. The subcontractor agrees to pay for the defense of the contractor and/or owner upon demand.

Case ID: 160500584

4. The subcontractor agrees to be bound to the contractor by the terms and conditions of the contractor's agreement with the owner, a copy of said agreement being available for inspection at the office of the contractor. The subcontractor further agrees that all conditions and requirements imposed, or to be imposed, upon the contractor by its contract with the owner shall be performed by the subcontractor insofar as applicable to the work under the subcontract, and the subcontractor hereby assumes toward the contractor all obligations and responsibilities that the contractor, by contract, has assumed or will assume toward the owner with respect to said work.

**Section III. Insurance Requirements**

A. The Subcontractor shall purchase and maintain insurance of the following types of coverage and limits of liability:

    1) Commercial General Liability (CGL) with limits of Insurance of not less than $1,000,000 each occurrence and $2,000,000 Annual Aggregate.

    a) If the CGL coverage contains a General Aggregate Limit, such General Aggregate shall apply separately to each project.

    b) CGL coverage shall be written on ISO Occurrence form CG 00 01 1093 or a substitute form providing equivalent coverage and shall cover liability arising from premises, operations, independent contractors, products-completed operations, and personal and advertising injury.

    c) General Contractor, Owner and all other parties required of the General Contractor shall be included as insureds on the CGL, using ISO Additional Insured Endorsement CG 20 10 (11 85) or CG 20 10 (10 93) AND CG 20 37 (10 01) or CG 20 33 (10 01) AND CG 20 37 (10 01) or an endorsement providing equivalent coverage to the additional insureds. This insurance for the additional insureds shall be as broad as the coverage provided for the named insured subcontractor. It shall apply as Primary and non-contributing Insurance before any other insurance or self-insurance, including any deductible, maintained by, or provided to, the additional insured.

    d) Subcontractor shall maintain CGL coverage for itself and all additional insureds for the duration of the project and maintain Completed Operations coverage for itself and each additional insured for at least 3 years after completion of the Work.

    2) Automobile Liability

    a) Business Auto Liability with limits of at least $1,000,000 each accident.

    b) Business Auto coverage must include coverage for liability arising out of all owned, leased, hired and non-owned automobiles.

    c) General Contractor, Owner and all other parties required of the General Contractor, shall be included as insureds on the auto policy via the use of form CA 20 48 02 99 or the equivalent.

    3) Commercial Umbrella

    a) Umbrella limits must be at least $2,000,000.

    b) Umbrella coverage must include as insureds all entities that are additional insureds on the CGL.

    4) Workers Compensation and Employers Liability

    a) Employers Liability Insurance limits of at least $500,000 each accident, $500,000 for bodily injury by accident, and $500,000 each employee for injury by disease.

    b) Where applicable, U.S. Longshore and Harborworkers Compensation Act Endorsement shall be attached to the policy.

    c) Where applicable, the Maritime Coverage Endorsement shall be attached to the policy.

B. Subcontractor waives all rights against Contractor, Owner and Architect and their agents, officers directors and employees for recovery of damages to the extent these damages are covered by commercial general liability, commercial umbrella liability, business auto liability or workers compensation and employers liability insurance maintained per requirements stated above. Subcontractor's Workers Compensation policy has WAIVER OF OUR RIGHT TO RECOVER FROM OTHERS ENDORSEMENT with Contractor, Owner and Architect listed on SCHEDULE. Attached to each certificate of insurance shall be a copy of the Additional Insured Endorsement that is part of the Subcontractor's Commercial General Liability Policy. These certificates and the insurance policies required shall contain a provision that coverage afforded under the policies will not be canceled or allowed to expire until at least 30 days prior written notice has been given to contractor.

C. Contractor shall be named as an additional insured on the subcontractor's insurance policies as per the following:
a. Coverage shall be provided in the subcontractor's general liability policy via the use of ISO form CG 20 10 11/85 or its equivalent, or via the use of the combination of ISO forms CG 20 10 10/93 and CG 20 37 10/01 or the equivalent.
b. Coverage for the contractor shall not be limited (e.g. not just for "general supervision").
c. Coverage shall be provided to the contractor on a primary, non-contributory basis.
d. Coverage shall include completed operations.
e. The subcontractor's umbrella policy shall become primary to the contractor's general liability policy.
f. On the subcontractor's automobile liability policy via the use of form CA 20 48 02 99 or the equivalent.

D. The subcontractor's commercial general liability and umbrella policies are endorsed to reflect that the contractor will be notified at least 30 days in advance in the event of cancellation (except 10 days for nonpayment).

E. The subcontractor must furnish the contractor with a valid certificate of insurance and a copy of the applicable additional insured endorsement(s) when this agreement is signed.

F. Minimum insurance limits to be carried by subcontractor:

Commercial General Liability
- $2,000,000 Products/ Completed Operations Aggregate
- $2,000,000 General Aggregate
- $1,000,000 Any One Occurrence (Coverage A)
- $1,000,000 Any One Person or Organization (Coverage B)

Automobile Liability (Comprehensive Coverage)
- $1,000,000 Each Accident

Commercial Excess Liability ("umbrella")
- $1,000,000 Products/ Completed Operations Aggregate
- $1,000,000 General Aggregate
- $1,000,000 Any One Occurrence (Coverage A)
- $1,000,000 Any One Person or Organization (Coverage B)

Employers Liability (Coverage B on the Workers Compensation Policy)
- $100,000 Each Accident
- $100,000 Each Employee for Injury by Disease

- $500,000 Aggregate for Injury by Disease whatsoever, sustained by any person or persons.

## Section IV: Arbitration

Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by binding arbitration and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The prevailing party in any arbitration concerning this Agreement shall be entitled to reasonable attorneys' fees.

## Section V. Warranty:

Subcontractor warrants its work for a period of _____ year(s) against all defects in materials or workmanship. (If the amount of years has been left blank in this section, it is presumed that the period of years is 5 years)

## Section VI. Miscellaneous:

A. Subcontractor is an independent contractor and not an employee of Contractor.

B. This Agreement shall be in full force and effect from the date of signing unless canceled in writing by either party with thirty (30) days' written notice. The cancellation of this Agreement shall not negate any term or condition, such as the indemnity or insurance requirements.

C. This Agreement is governed by the laws of the State of Pennsylvania.

D. Any amendment(s) must be given in writing.

SUBCONTRACTOR                         CONTRACTOR
Company: _New Life  Contractors_      Company: _Bartison Property~_
By: _Walsh~_                          By _Dan Bartison_
Title: _President_                    Title: _Owner_
Date: _6 - 8 - 15_                    Date: _6 - 5 - 15_

X

# Exhibit "B"

SALTZ, MONGELUZZI, BARRETT & BENDESKY, P.C.
BY:  LARRY BENDESKY/ADAM J. PANTANO/
MICHELLE E. ASHCROFT
IDENTIFICATION NO.:  51026/85261/320147
52ND FLOOR
1650 MARKET STREET
PHILADELPHIA, PA  19103
(215) 496-8282



ATTORNEY FOR
PLAINTIFFS

---

MELQUIADES COSTA GOIS and
ANA PAULA BOSCARIOL, h/w
2449 Hartel Avenue, Apt. A
Philadelphia, PA 19152
                         **Plaintiffs**

      **v.**

DSB HOLDING COMPANY, LLC
3705 Falls Circle
Philadelphia, PA 19129

And

BORKSON PROPERTIES, LLC
3900 Ford Road
Philadelphia, PA 19131

And

HARMAN DEUTSCH CORP. d/b/a a/k/a
HARMAN DEUTSCH ARCHITECTURE
631 N. 12th Street, 1st Floor
Philadelphia, PA 19129

And

EXPERT CONSTRUCTION SERVICES
17 Jefferson Street
Riverside, NJ 08075

And

BLIZZARD CONSTRUCTION
307 Burlington Avenue
Delanco, NJ 08075

And

PHILADELPHIA COUNTY
COURT OF COMMON PLEAS
LAW DIVISION

MAY TERM, 2016

No. 584

JURY TRIAL DEMANDED

Case ID: 160500584

**BLIZZARD INDUSTRIES, LLC**
3 Rosol Lane
Saddlebrook, NJ 07663

And

**MAX MOSKOWITZ AND
MARSH MOSKOWITZ**
318 Richmond Street
Philadelphia, PA 19125

**Defendants**

| "NOTICE | "AVISO |
|---|---|
| "You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by an attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgement may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. | "Le han demandado en corte. Si usted quiere defenderse contra las demandas nombradas en las páginas siguientes, tiene veinte (20) días, a partir de recibir esta demanda y la notificación para entablar personalmente o por un abogado una comparecencia escrita y tambien para entablar con la corte en forma escrita sus defensas y objeciones a las demandas contra usted. Sea avisado que si usted no se defiende, el caso puede continuar sin usted y la corte puede incorporar un juicio contra usted sin previo aviso para conseguir el dinero demandado en el pleito o para conseguir culquier otra demanda o alivio solicitados por el demandante. Usted puede perder dinero o propiedad u otros derechos importantes para usted. |
| "YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP. | USTED DEBE LLEVAR ESTE DOCUMENTO A SU ABOGADO INMEDIATAMENTE. SI USTED NO TIENE ABOGADO (O NO TIENE DINERO SUFICIENTE PARA PARGAR A UN ABOGADO), VAYA EN PERSONA O LLAME POR TELEFONO LA OFICINA NOMBRADA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASSISTENCIA LEGAL. ESTA OFICINA PUEDE PROPORCIONARLE LA INFORMACION SOBRE CONTRATAR A UN ABOGADO. |
| THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER. IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE. PHILADELPHIA BAR ASSOCIATION LAWYER REFERRAL and INFORMATION SERVICE One Reading Center Philadelphia, Pennsylvania 19107 (215) 238-1701" | SI USTED NO TIENE DINERO SUFICIENTE PARA PAGAR A UN ABOGADO, ESTA OFICINA PUEDE PROPORCIONARLE INFORMACION SOBRE AGENCIAS QUE OFRECEN SERVICIOS LEGALES A PERSONAS QUE CUMPLEN LOS REQUISITOS PARA UN HONORARIO REDUCIDO O NINGUN HONORARIO. ASSOCIACION DE LICENDIADOS DE FILADELFIA SERVICO DE REFERENCA E INFORMACION LEGAL One Reading Center Filadelfia, Pennsylvania 19107 Telefono: (215) 238-1701" |

## AMENDED COMPLAINT

1.    Plaintiffs, Melquiades Costa Gois and Ana Paula Boscariol, husband and wife,

are adult individuals and citizens of Pennsylvania, residing at the above captioned address.

2.    Defendant, DSB Holding Company, LLC (hereinafter referred to as "DSB

Holding), is a limited liability company or other business entity organized and existing under the

Case ID: 160500584

laws of Pennsylvania with its principal place of business located at the above captioned address, and at all times material hereto, regularly conducted business in the County of Philadelphia.

3.      At all times relevant hereto, DSB Holding purposely established significant contacts in Pennsylvania, and has carried out, and continues to carry out substantial, continuous, and systematic business activities in Pennsylvania.

4..      At all relevant times, DSB Holding was acting by and through its employees, servants, and agents, acting within the course and scope of their employment, service and agency.

5.      Defendant, Borkson Properties, LLC (hereinafter referred to as "Borkson Properties"), is a limited liability company or other business entity organized and existing under the laws of Pennsylvania with its principal place of business located at the above captioned address, and at all times material hereto, regularly conducted business in the County of Philadelphia.

6.      At all times relevant hereto, Borkson Properties purposely established significant contacts in Pennsylvania, and has carried out, and continues to carry out substantial, continuous, and systematic business activities in Pennsylvania.

7.      At all relevant times, Borkson Properties was acting by and through its employees, servants, and agents, acting within the course and scope of their employment, service and agency.

8.      Defendant, Harman Deutsch Corp. d/b/a a/k/a Harman Deutsch Architecture (hereinafter referred to as "Harman Deutsch Corp."), is a corporation or other business entity organized and existing under the laws of Pennsylvania with its principal place of business

201707282003595 Receipt Date: 7/28/2017 1:23:02 PM Source: PO Box MUS 7271 Image Type: Music - Work Product Page 21 of 53

located at the above captioned address, and at all times material hereto, regularly conducted business in the County of Philadelphia.

9.      At all times relevant hereto, Harman Deutsch Corp. purposely established significant contacts in Pennsylvania, and has carried out, and continues to carry out substantial, continuous, and systematic business activities in Pennsylvania.

10.     At all relevant times, Harman Deutsch Corp. was acting by and through its employees, servants, and agents, acting within the course and scope of their employment, service and agency.

11.     Defendant, Expert Construction Services (hereinafter referred to as "Expert Construction"), is a corporation or other business entity organized and existing under the laws of New Jersey with its principal place of business located at the above captioned address, and at all times material hereto, regularly conducted business in the County of Philadelphia.

12.     At all times relevant hereto, Expert Construction purposely established significant contacts in Pennsylvania, and has carried out, and continues to carry out substantial, continuous, and systematic business activities in Pennsylvania.

13.     At all relevant times, Expert Construction was acting by and through its employees, servants, and agents, acting within the course and scope of their employment, service and agency.

14.     Defendant, Blizzard Construction, is a corporation or other business entity organized and existing under the laws of New Jersey with its principal place of business located at the above captioned address, and at all times material hereto, regularly conducted business in the County of Philadelphia.

15.     At all times relevant hereto, Blizzard Construction purposely established significant contacts in Pennsylvania, and has carried out, and continues to carry out substantial, continuous, and systematic business activities in Pennsylvania.

16.     At all relevant times, Blizzard Construction was acting by and through its employees, servants, and agents, acting within the course and scope of their employment, service and agency.

17.     Defendant, Blizzard Industries, LLC (hereinafter referred to as "Blizzard Industries"), is a corporation or other business entity organized and existing under the laws of New Jersey with its principal place of business located at the above captioned address, and at all times material hereto, regularly conducted business in the County of Philadelphia.

18.     At all times relevant hereto, Blizzard Industries purposely established significant contacts in Pennsylvania, and has carried out, and continues to carry out substantial, continuous, and systematic business activities in Pennsylvania.

19.     At all relevant times, Blizzard Industries was acting by and through its employees, servants, and agents, acting within the course and scope of their employment, service and agency.

20.     Defendants Max Moskowitz and Marsh Moskowitz ("Moskowitz defendants") are adult residents of Pennsylvania residing and/or doing business at the above captioned address.

21.     At all times relevant hereto, the Moskowitz defendants purposely established significant contacts in Pennsylvania, and has carried out, and continues to carry out substantial, continuous, and systematic business activities in Pennsylvania.

22.     At all relevant times, the Moskowitz defendants were acting by and through their employees, servants, and agents, acting within the course and scope of their employment, service and agency.

23.     On June 23, 2015, Plaintiff, Melquiades Costa Gois, was lawfully working as a carpenter at a construction project located at and/or around 327 East Allen Street, Philadelphia PA, 19125 (hereinafter referred to as the "Project").

24.     At all relevant times, Plaintiff, Melquiades Costa Gois, was lawfully on the premises at the Project as a business invitee, to whom the Defendants owed the highest duty of care.

25.     At all relevant times, Plaintiff, Mr. Gois, while acting within the course and scope of his employment, was working at the Project and framing one of the buildings that was under construction at the Project.

26.     While Plaintiff was performing framing duties on one of the buildings under construction at the Project, the building collapsed, falling on top of Plaintiff and crushing Plaintiff's body.

27.     As a result of this accident, Mr. Gois suffered catastrophic, permanent, debilitating and life-altering injuries, as discussed more fully below.

28.     Upon information and belief, at all relevant times hereto, Defendant, DSB Holding, was the owner of the property located at and/or around 327 East Allen Street, Philadelphia PA, 19125.

29.     Upon information and belief, at all relevant times hereto, Defendant, DSB Holding, owned, operated, supervised, leased and/or controlled the property located at and/or around 327 East Allen Street, Philadelphia PA, 19125 and the Project.

30.     Upon information and belief, Defendant, Borkson Properties, was a licensed contractor working at the Project.

31.     Upon information and belief, at all relevant times hereto, Defendant, Borkson Properties, owned, operated, supervised, leased and/or controlled the property located at and/or around 327 East Allen Street, Philadelphia PA, 19125 and the Project.

32.     At all relevant times hereto, Defendant, Harman Deutsch Corp., was the architect for the Project.

33.     Upon information and belief, at all relevant times hereto, Defendant, Harman Deutsch Corp., owned, operated, supervised, leased and/or controlled the property located at and/or around 327 East Allen Street, Philadelphia PA, 19125 and the Project.

34.     Defendant, Harman Deutsch Corp., as the architect for the Project, had a duty to plaintiff to render architectural, design, or engineering services consistent with the standards of care in the engineering, design and architectural industry.

35.     Upon information and belief, Defendant, Expert Construction Services, was a licensed contractor working at the Project.

36.     Upon information and belief, at all relevant times hereto, Defendant, Expert Construction Services, owned, operated, supervised, leased and/or controlled the property located at and/or around 327 East Allen Street, Philadelphia PA, 19125 and the Project.

37.     Upon information and belief, Defendant, Blizzard Construction, was a licensed contractor working at the Project.

38.     Upon information and belief, at all relevant times hereto, Defendant, Blizzard Construction, owned, operated, supervised, leased and/or controlled the property located at and/or around 327 East Allen Street, Philadelphia PA, 19125 and the Project.

Case ID: 160500584

39.     Upon information and belief, Defendant, Blizzard Industries, was a licensed contractor working at the Project.

40.     Upon information and belief, at all relevant times hereto, Defendant, Blizzard Industries, owned, operated, supervised, leased and/or controlled the property located at and/or around 327 East Allen Street, Philadelphia PA, 19125 and the Project.

41.     Upon information and belief, at all relevant times hereto, the Moskowitz defendants, owned, operated, supervised, leased and/or controlled the property located at and/or around 327 East Allen Street, Philadelphia PA, 19125 and the Project.

42.     At all times relevant hereto, one or more Defendants controlled and/or were responsible for the work and the supervision of the work being performed at the Project.

43.     At all times pertinent hereto, Defendants owed a duty to those persons lawfully engaged in work on the premises including Plaintiff.

44.     A business owner must not create an unsafe condition at a work site.

45.     A business owner must not permit an unsafe condition to continue to exist at a work site.

46.     A business owner must take steps to prevent unsafe conditions from developing at a work site.

47.     A business owner is not allowed to needlessly endanger its workers and/or employees.

48.     A business owner must correct any unsafe conditions it knows or should know about at a work site.

49.     A business owner must perform inspections on its work sites to discover unsafe conditions.

Case ID: 160500584

50.     A business owner should hire a competent property inspector to perform inspections of its work sites.

51.     A business owner should train its workers and/or employers to ensure they perform their job in a safe manner.

52.     A business owner that refuses or is unable to correct an unsafe condition must provide others with an appropriate notice and warning of the unsafe condition.

53.     A business owner must train its workers and/or employees to ensure a safe work environment.

54.     Upon information and belief, prior to June 23, 2015, Defendants knew or had reason to know that workers at the Project, such as Plaintiff, were routinely required to work on and/or around the buildings at the Project in order to perform their job responsibilities.

55.     Prior to June 23, 2015, Defendants knew or should have known of the unsafe working conditions at the Project, and had a duty to warn workers and safeguard workers, such as Mr. Gois, of the dangers posed by the unsafe working conditions.

56.     Defendants, having possession and control of the Project, had a duty to provide workers, such as Plaintiff with a safe place to work, including a duty to inspect the work being performed and the securement of the buildings that workers, such as Plaintiff, were required to work in, around and/or near at the Project.

57.     Defendants, having possession and control of the Project, had a duty to ensure that the buildings at the Project were secure and safe for workers, such as Plaintiff, to work in and/or around such buildings.

58.     Defendants had a duty to provide workers with proper equipment to safely perform their job duties and ensure such equipment was used safely and properly.

59.     Defendants, by and through their agents, servants, workmen and/or employees, breached their duties owed to Plaintiff by failing to provide safe equipment to the workers, failing to ensure the workers were properly trained, failing to adequately inspect and monitor the work performed, failing to ensure the buildings at the Project were properly and adequately secured, and/or failing to enforce/establish practices and/or procedures to protect and/or warn workers of risks associated with the unstable buildings under construction.

60.     Defendants, by and through their agents, servants, workmen and/or employees, failed to properly ensure that the buildings at the Project were maintained, inspected and secured in a proper manner before allowing workers, such as a Plaintiff, to work in and/or around such buildings.

61.     As a direct and proximate result of the carelessness, negligence, and other liability-producing conduct of the Defendants, Plaintiff, Melquiades Costa Gois, was forced to suffer serious, disabling and permanent injuries, including but not limited to lacerations and contusions to his head, face and body, acute nasal fractures, multilevel spinal disc herniations with cord impingement, contusions to his right knee, meniscal tear to his right knee, MCL and ACL sprains to his right knee, and other orthopedic, neurological and psychological injuries, the full extent of which has yet to be determined. He has in the past and may in the future require medicines, medical care and treatment; he has in the past and may in the future continue to be compelled to expend monies and incur further obligations for such medical care and treatment; he has in the past and may in the future continue to suffer agonizing aches, pains and mental anguish; he has in the past and may in the future continue to be disabled from performing his usual duties, occupations and avocations, all to his great loss and detriment.

Case ID: 160500584

62.     Plaintiff, Melquiades Costa Gois, has sustained and makes claim for pain and suffering, loss of physical function, permanent physical, mental and psychological injuries, humiliation and embarrassment, loss of enjoyment of life, loss of earnings and future earning capacity, and all of the damages to which he is entitled or may be entitled under the law of Pennsylvania.

63.     As a direct and proximate result of the carelessness, negligence, and other liability-producing conduct of the Defendants, Plaintiff, Ana Paula Boscariol, has suffered and makes claims for the loss of consortium and deprivation of her husband's love, companionship, comfort, affection, society, moral guidance, intellectual strength and physical assistance as well as the loss of the assistance and earnings of her husband.

64.     Plaintiffs aver that their injuries and damages were caused solely by the acts of Defendants jointly and/or individually and/or through their joint and individual agents, servants, workmen and/or employees as hereinbefore and hereinafter set forth.

65.     Defendants' conduct increased the risk of harm and/or was a factual cause and/or were a substantial factor in causing the injuries of plaintiff.

## COUNT I – NEGLIGENCE
## MELQUIADES COSTA GOIS v. ALL DEFENDANTS

66.     Plaintiffs incorporate all preceding paragraphs of this Complaint as if the same were set forth, at length, herein.

67.     At all relevant times, Defendants, possessed, controlled and/or supervised the Project, the equipment and the work being performed at the site.

68.     At all relevant times, Defendants owned, operated, and/or maintained the equipment on the Project.

69.     At all relevant times, Defendants undertook the supervision of work being performed at the Project, and in connection therewith, established plans, recommendations, designs, procedures and specifications for the performance of said work.

70.     At all relevant times, Defendants inspected, supervised, and maintained control over the safety of the workers at the Project.

71.     Defendants, having undertaken the inspection and supervision of the work at the Project, owed a duty to those persons engaged in the performance of said work, including Plaintiff, Mr. Gois, a business invitee, to provide a safe environment, free from unreasonable and dangerous hazards, within which to perform the construction work.

72.     Defendants had a duty to adopt, promulgate and enforce proper, adequate, necessary and appropriate standards, guidelines and procedures for the establishment and maintenance of workplace and work site safety for the protection of workers, including Plaintiff, Mr. Gois.

73.     Prior to the date of the accident, Defendants knew or should have known of the existence of the hazardous conditions and work practices then and there existing at the Project.

74.     Prior to the date of the accident, Defendants knew or should have known of the existence of the hazardous conditions that caused the accident in which Plaintiff, Mr. Gois, sustained his serious, permanent and debilitating injuries.

75.     At all relevant times, Defendants had a duty to warn persons who would be on the Project, and to safeguard business invitees, such as Plaintiff from hazardous conditions.

76.     At all relevant times, Defendants had a duty to train workers in the proper and safe operation of equipment, and to ensure that only trained personnel were permitted to operate equipment.

Case ID: 160500584

77.     At all relevant times, Defendants individually, jointly and/or severally, maintained certain responsibilities and obligations for the work being performed at the Project, including responsibilities for keeping said premises free from hazards, the responsibility not to create dangerous conditions by their activities thereon, and to implement and enforce all safety precautions, including, but not limited to, assuring that adequate safety equipment and procedures were in place, warning contractors and subcontractors about safety hazards, and ensuring that the work was being performed to meet all applicable safety rules and regulations, in conformance with best practices in the construction industry.

78.     Defendants, by and through their agents, servants, workmen and/or employees, acted negligently and/or carelessly by:

a)     failing to provide Plaintiff a safe place in which to work;

b)     failing to properly develop, plan, plot, design, coordinate, supervise, inspect, maintain, manage, sequence and control the Project;

c)     failing to properly calculate the stability needed to prevent the collapse;

d)     failing to adequately inspect or require that others under its control inspect the premises thoroughly and regularly to identify, remedy and post warnings about dangerous and hazardous conditions;

e)     breaching its duties under the Restatement (Second) of Torts, including but not limited to §§323, 324(a), 341A, 343, 412, 413, 414, 416, 427, 427;

f)     failing to properly train, supervise, manage and equip its employees;

g)     failing to hire competent employees, safety inspectors, contractors, subcontractors, advisors, managers, equipment providers and/or operators, material suppliers and others to assure a safe workplace free of hazards;

h)     failing to warn Plaintiff, a business invitee, of the peculiar, dangerous and/or unsafe conditions existing at the Project;

i)     exposing Plaintiff, a business invitee, to unreasonable danger by failing to develop, coordinate, adopt, enact, employ and/or enforce proper and adequate safety programs, precautions, procedures, training, supervision,

Case ID: 160500584

measures and plans at the Project;

j)      violating and/or failing to comply with all federal and state statutes, local ordinances, and all other rules, enactments or regulations applicable, or in effect, be they administrative, industry-wide or otherwise pertaining to the performance of construction work at the Project, including but not limited to applicable OSHA regulations;

k)      failing to ensure that all contractors, subcontractors, material suppliers and others engaged in work at the Project comply with all federal and state statutes, local ordinances, and all other rules, enactments or regulations applicable, or in effect, be they administrative, industry-wide or otherwise pertaining to the performance of construction work, including but not limited to applicable OSHA regulations; which include;

l)      failing to ensure that all contractors, subcontractors, material suppliers and others engaged in work at the Project furnish materials and equipment and perform services in conformity with the standard of care prevailing in the industry at the time in question;

m)      performing and furnishing construction services in a wholly inadequate, unsafe and negligent manner;

n)      failing to assure that a "Competent Person" who is capable of identifying existing and predictable hazards in the surroundings or working conditions which are hazardous or dangerous to employees, and who has authorization to take prompt corrective measures to eliminate them is present on the Project and in a position of authority at all times;

o)      failing to properly supervise the planning, coordination, scheduling, sequencing and performance of the work at the Project, including the work of all contractors, subcontractors, material suppliers and others engaged in work at the compression station;

p)      failing to cease and/or postpone the work being performed on the date of Plaintiff's accident until proper and necessary precautions could be taken to safeguard business invitees including Plaintiff;

q)      failing to recommend, provide and enforce frequent inspections of the work area and all equipment, procedures and devices necessary to assure a workplace free of hazards;

r)      performing and allowing contractors, subcontractors, material and equipment suppliers and others engaged at the Project to perform work without a comprehensive site-specific safety plan in place;

s)      failing to perform a comprehensive safety analysis of the Project, and of

the tasks underway on the date of the incident and to promulgate safety rules and practices accordingly;

t) failing to implement, require and/or enforce a policy that all contractors, subcontractors, material and equipment suppliers and all workers on the project site understand, obey and sign off on site-specific and task-specific safety rules;

u) failing to effectively communicate and post adequate warnings about hazardous conditions at the Project;

v) failing to provide adequate safety equipment, materials, training and protection for business invitees including Plaintiff;

w) failing to implement, require and/or enforce all necessary safety measures by all contractors, subcontractors, suppliers and others engaged in performing work at the Project;

x) failing to hire and retain a properly trained, designated safety representative who had no duties other than to administer the project's safety plan;

y) failing to require that the contractor and/or subcontractor safety program be specific to the work being done by Plaintiff;

z) failing to hire and/or retain a properly trained risk manager assigned to evaluate the tasks for potential hazards, in order to minimize these hazards and timely coordinate and train crews in applicable safety procedures;

aa) failing to minimize the risk to individuals during all phases of the construction process including the setting, locating, leveling, aligning, welding and/or framing of the building;

bb) failing to properly support, brace, and restrain the building throughout the course of construction;

cc) failing to ensure the work was being done in a safe manner at all times;

dd) allowing workers to work in and/or around unsecured buildings at the Project;

ee) failing to properly and adequately secure the structure of the buildings at the Project;

ff) failing to safeguard workers of the risk of collapsing buildings at the Project;

gg) failing to ensure that appropriate means and methods were established

201707282003595 Receipt Date  7/28/2017 1:23 02 PM Source  PO Box MUS 7271 Image Type: Music - Work Product Page 33 of 53

for safe and proper setting, locating, levelling, aligning, welding and/or securing of all building under construction at the Project; and

hh)    failing to provide special precautions which would have protected Plaintiff from the particular and unreasonable risk and/or risks of physical harm which Defendant recognized or should have recognized were likely to be created by the work being done on the project.

79.    The Defendants' actions and/or in-actions were substantial factors and/or factual causes and/or increased the risk of harm to Plaintiff.

80.    By reason of the carelessness, negligence, gross negligence and/or other liability producing behavior of the Defendants, as aforesaid, Plaintiff, Melquiades Costa Gois, has sustained serious and permanently disabling injuries more fully set forth above and incorporated by reference as though fully set forth herein.

**WHEREFORE**, Plaintiffs, Melquiades Costa Gois and Ana Paula Boscariol, claim of Defendants, DSB Holding Company, LLC, Borkson Properties, LLC, Harman Deutsch Corp. d/b/a a/k/a Harman Deutsch Architecture, each of them, jointly and severally, sums in excess of Fifty Thousand Dollars ($50,000.00) in damages, exclusive of interest, costs, and damages, pursuant to Pa.R.C.P. §238, and brings this action to recover the same.

## COUNT II—LOSS OF CONSORTIUM
## ANA PAULA BOSCARIOL v. ALL DEFENDANTS

81.    Plaintiffs incorporate all preceding paragraphs of this Complaint, as though fully set forth herein.

82.    Plaintiff, Ana Paula Boscariol, is and was at all relevant times the wife of Plaintiff, Melquiades Costa Gois, and as such, is entitled to his society, companionship and services.

83.    By reason of the Defendants' carelessness, negligence, and gross negligence, wife-plaintiff, Paul Gois, has suffered the loss of consortium and has been deprived of her

Case ID: 160500584

husband's love, companionship, comfort, affection, society, moral guidance, intellectual strength and physical assistance and the loss of the assistance and earnings of plaintiff-husband, Melquiades Costa Gois.

WHEREFORE, Plaintiff, Ana Paula Boscariol, demands judgment against all Defendants, each of them, jointly and severally, sums in excess of Fifty Thousand Dollars ($50,000.00) in damages, exclusive of interest, costs, and damages, pursuant to Pa.R.C.P. §238, and brings this action to recover the same.

Respectfully submitted,

SALTZ, MONGELUZZI, BARRETT & BENDESKY, P.C.

BY: /s/ LARRY BENDESKY
LARRY BENDESKY
ADAM J. PANTANO
MICHELLE E. ASHCROFT

Attorneys for Plaintiffs, Melquiades Costa Gois
and Ana Paula Boscariol

Dated: June 13, 2016

# Exhibit "C"

# MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY

MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY
P.O. BOX 4030
SCOTTSDALE, ARIZONA 85261-4030

COMMERCIAL INSURANCE POLICY

MUSIC and its General Agent Jimcor (Plymouth Meeting)

are pleased to have Issued  Policy MP0037004000293 _____ to

Dan Borkson

In witness whereof, Mesa Underwriters Speciality Insurance Company has caused this policy to be signed by its President and countersigned on the Declaration page by a duly Authorized Representative of the Company.

Corporate Secretary

President

MUSIC

**MUS 01 01 10001 0412**               INSURED

# COMMON POLICY DECLARATIONS

## MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY

**Policy Number:** MP0037004000293

☒ **New**            ☐ **Cross-Ref**

☐ **Renewal**        ☐ **Rewrite**

**Previous Policy Number:** _____

**Policy Period:** From 10/30/2014  To 10/30/2015   at **12:01 A.M.** Standard Time at your mailing address shown below.

No Flat Cancellation

**Named Insured:**
Dan Borkson
DBA Borkson Properties LLC and DSB Holdings LLC

**Mailing Address:**
3900 Ford Road

Philadelphia                  PA 19131

0831-MP0037004000293-14 Tax State: PA

The insurer which has issued this insurance is not licensed by the Pennsylvania Insurance Department and is subject to limited regulation   This insurance is NOT covered by the Pennsylvania Property and Casualty Insurance Guaranty Association.

**Agent and Mailing Address:**       Agent Number: 37004
Jimcor (Plymouth Meeting)
2 Valley Square
2 Valley Square, Suite 100
Blue Bell                  PA 19422

**Business Description:**
General Contractor

Select Coverage Part (for which insurance is being afforded)

| | | |
|---|---|---|
| ☒ **Commercial General Liability** | $ | 24,061.00 |
| ☐ **Commercial Property** | $ | |
| ☐ **Commercial Inland Marine** | $ | |
| ☐ **Commercial Crime** | $ | |
| ☐ **Garage** | $ | |
| ☐ **TRIA** | $ | |
| ☐ **Other** (Describe) | $ | |

PA SLT            $721.83
Policy Fee        $185.00
Stamping Fee      $25.00

| | | |
|---|---|---|
| **Total Advance Premium** $ | | 24,061.00 |
| **Total Other Charges** $ | | 931.83 |
| **Total** $ | | 24,992.83 |

**Premiums Shown are payable at inception or as indicated on the individual Coverage Declarations.**

Form(s) and Endorsement(s), including edition dates, made a part of this policy at the time of issue:  See Schedule of Forms

Countersigned: Blue Bell            PA   11/20/2014   By: _____
                                          Date              Authorized Agent

ARI    ADD    Smith Insurance Associates Inc.
               P.O. Box 858

MUS 01 01 10002 0412              INSURED

## SCHEDULE OF FORMS AND ENDORSEMENTS

**MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY**

| | |
|---|---|
| Named Insured | Dan Borkson |
| Policy Number | MP0037004000293 |
| Effective Date: | 10/30/2014 |

### Forms Applicable - COMMON POLICY FORMS

```
MUS 01 01 10001 0412  POLICY JACKET
MUS 01 01 10002 0412  COMMON POLICY DECLARATION
MUS 01 01 10003 1013  SCHEDULE OF FORMS & ENDORSEMENTS
MUS 01 01 10006 0412  BLANK ENDORSEMENT
MUS 01 01 10007 1013  MINIMUM EARNED PREMIUM ENDORSEMENT
MUS 01 01 10043 1013  PRIVACY NOTICE
IL 00 17 11 98        COMMON POLICY CONDITIONS
MUS 01 01 10036 1013  PA SERVICE OF SUIT
IL 02 46 09 07        PA CHANGES - CANCELLATION AND NONRENEWAL
IL 09 10 07 02        PA NOTICE
ILN 088 09 03         PA FRAUD STATEMENT
```

### Forms Applicable - GENERAL LIABILITY

```
MUS 01 01 20001 0412  GENERAL LIABILITY COVERAGE PART DECLARATIONS
MUS 01 01 20002 0412  GENERAL LIABILITY SUPPLEMENTAL DECLARATIONS
MUS 01 01 20002 0412  GENERAL LIABILITY SUPPLEMENTAL DECLARATIONS
MUS 01 01 20004 1013  LIABILITY DEDUCTIBLE
MUS 01 01 20007 1013  LIMITED COVG FOR CONTRACTORS & EMPLOYEES - GENERAL LIABILITY
MUS 01 01 20008 1013  EXCL - ROOFING OPERATIONS CONDITIONAL (OPEN ROOF)
MUS 01 01 20023 1013  SPECIAL CONDITIONS - SUBCONTRACTORS
MUS 01 01 20026 1013  EXCL - OVERSPRAY PROPERTY DAMAGE
MUS 01 01 20030 0214  EXCL - PRIOR COMPLETED OR ABANDONED WORK
MUS 01 01 20052 1013  NEW RESIDENTIAL CONSTRUCTION LIMITATION
MUS 01 01 20058 1013  EXCL - LEAD CONTAMINATION
MUS 01 01 20080 1013  EXCL - EARTH MOVEMENT
MUS 01 01 20082 1013  EXCL - ASBESTOS
MUS 01 01 20084 1013  NON-STACKING OF LIMITS ENDORSEMENT
MUS 01 01 20091 1013  NY CONTRACTORS EXCLUSION-GL
MUS 01 01 20094 1013  AMENDMENT OF CONDITIONS - PREMIUM AUDIT
MUS 01 01 20102 1013  AI - BLANKET W/PRIMARY WORDING-OWNERS, LESSEES, CONTR-AUTO STATUS
MUS 01 01 20103 1013  BLANKET WAIVER OF TRANSFER OF RIGHTS
MUS 01 01 20112 1013  EXCL - OCCUPATIONAL DISEASE
CG 00 01 04 13        COMMERCIAL GENERAL LIABILITY COVG FORM
CG 20 12 04 13        AI - STATE OR POLITICAL SUBDIVISIONS - PERMITS
CG 20 33 04 13        AI - OWNERS, LESSEES, CONTR-AUTO STATUS
CG 21 39 10 93        CONTRACTUAL LIABILITY LIMITATION
CG 21 44 07 98        LIMITATION OF COVG TO DESIGNATED PREMISES OR PROJECT
CG 21 47 12 07        EMPLOYMENT-RELATED PRACTICES EXCLUSION
CG 21 55 09 99        EXCL - TOTAL POLLUTION EXCLUSION WITH A HOSTILE FIRE EXCEPTION
CG 21 67 12 04        EXCL - FUNGI OR BACTERIA
CG 21 86 12 04        EXCL - EXTERIOR INSULATION AND FINISH SYSTEMS
CG 21 96 03 05        EXCL - SILICA OR SILICA-RELATED DUST
CG 22 24 04 13        EXCL - INSPECTION, APPRAISAL & SURVEY COMPANIES
CG 22 79 04 13        EXCL - CONTRACTORS - PROF LIAB
CG 24 26 04 13        AMENDMENT OF INSURED CONTRACT DEFINITION
IL 00 21 09 08        NUCLEAR ENERGY LIABILITY EXCL ENDT
```

MESA UNDERWRITERS SPECIALTY
  INSURANCE COMPANY

Endorsement #

Named Insured: Dan Borkson

Policy Number: MP0037004000293          Effective Date: 10/30/2014

(The above information is required only when this form is added after the policy is issued)

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

It is hereby agreed and understood that form MUS010120052 - new Residential Construction Limitation
is amended as follows:

Item I., paragraph 3 is amended to read

"This exclusion does not apply to new construction if the total number of "new
residential construction" within a "development" does not exceed (20) individual
units of "new residential construction".

All other terms and conditions of this policy remain unchanged.

Authorized Signature                                    Date

**MUS 01 01 10006 0412**                    INSURED

## MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY

Policy Number: **MP0037004000293**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MINIMUM EARNED PREMIUM ENDORSEMENT

This endorsement modifies insurance provided under the following:

THIS ENDORSEMENT APPLIES TO ALL COVERAGE PARTS

If this insurance is cancelled at your request, there will be a minimum earned premium retained by Mesa Underwriters Specialty Insurance Company of $            or   25   % of the premium for this insurance, whichever is greater.

Cancellation of this insurance for nonpayment of premium is considered a request by the first Named Insured for cancellation of this insurance

The provisions of this amendment apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the minimum earned premium.

All other terms and conditions of this policy remain unchanged.

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

**PRIVACY POLICY**
**For**
**MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY**

Mesa Underwriters Specialty Insurance Company understands the importance placed by our customers on the privacy and safeguarding of their personal information. The Company intends and is obligated to protect all nonpublic personal information provided to the Company by our customers. Whether a consumer is already a policyholder or is applying for insurance or is a claimant, the Company will maintain the confidentiality and security of all individual's personal information as required by law.

In order to meet our customers' insurance needs and to comply with business, regulatory and legal obligations we are required to collect and at times, use personal information. The Company does not disclose personal information about customers, potential or former, for marketing purposes to nonaffiliated third parties. The Company may gather information from a variety of sources including but not limited to the Company's affiliates, consumer reporting agencies such as credit bureaus, property inspection services and other non-affiliated third party organizations. We do not disclose any personal information about our customers, except as follows:

1) with consumer/customer consent,
2) as required by law,
3) as permitted by law
4) as necessary or appropriate to underwrite, administer, service, effect, process or enforce an insurance policy that we have issued ( or are considering issuing), or
5) as necessary to otherwise service a customer's policy or effect a customer

When necessary, the Company may disclose nonpublic personal information to a nonaffiliated organization that is performing services relative to the policy or our operation, we require that such third parties use and disclose the information only as necessary relating to the service or function that they are performing on our behalf. It is important that the Companies' employees be aware of and abides by this Privacy Policy and the applicable laws governing the use, handling and disclosure of nonpublic personal information. Our employees may not access nonpublic personal information maintained by the Company on a general basis. Company employees will have access to personal nonpublic information of applicants, policyholders or claimants if this information relates to their job performance for the Company. The Company will maintain adequate safeguards to protect the confidentially and security of the nonpublic personal information that we obtain. Employees may not disclose or use nonpublic personal information except as authorized by the Company or as permitted or required by law. If an employee fails to comply with these requirements this may lead to appropriate disciplinary action by the Company up to, and including, dismissal.

This Privacy Policy applies to individuals who are applicants, policyholders, or claimants under insurance products or services obtained from the Company primarily for personal, family or household purposes; it does not apply to products or services obtained for business, commercial or agricultural purposes.

The Company will provide notice of its privacy policy to its customers not less than annually, while the policyholder maintains a relationship with us.

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least.

    a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    b. 30 days before the effective date of cancellation if we cancel for any other reason. ·

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

    a. Make inspections and surveys at any time;

    b. Give you reports on the conditions we find; and

    c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

    a. Are safe or healthful; or

    b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

INSURED

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY


THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### SERVICE OF SUIT PENNSYLVANIA

This endorsement modifies insurance provided under the following:

ALL COVERAGE PARTS

We may be sued in Pennsylvania on any cause of action arising in Pennsylvania under this policy.   Service of process can be made on Michael H. Lanza, Mesa Underwriters Specialty Insurance Company, 40 Wantage Avenue, Branchville, NJ 07890.   Proof of service should include a receipt signed on our behalf.


*Corye & Thalmann*

Authorized Representative

IL 02 46 09 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The **Cancellation** Common Policy Condition is replaced by the following.

**CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by writing or giving notice of cancellation.

2. **Cancellation Of Policies In Effect For Less Than 60 Days**

   We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation.

3. **Cancellation Of Policies In Effect For 60 Days Or More**

   If this policy has been in effect for 60 days or more or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

   **a.** You have made a material misrepresentation which affects the insurability of the risk. Notice of cancellation will be mailed or delivered at least 15 days before the effective date of cancellation.

   **b.** You have failed to pay a premium when due, whether the premium is payable directly to us or our agents or indirectly under a premium finance plan or extension of credit. Notice of cancellation will be mailed at least 15 days before the effective date of cancellation.

   **c.** A condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the policy period. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

   **d.** Loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease, at the time of cancellation, shall be certified to the Insurance Commissioner as directly affecting in-force policies. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

© ISO Properties, Inc., 2006

INSURED

**Page 1 of 2**

e. Material failure to comply with policy terms, conditions or contractual duties. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

f. Other reasons that the Insurance Commissioner may approve. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

This policy may also be cancelled from inception upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of facts material to the acceptance of the risk or to the hazard assumed by us.

4. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. Notice of cancellation will state the specific reasons for cancellation.

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata and will be returned within 10 business days after the effective date of cancellation. If the first Named Insured cancels, the refund may be less than pro rata and will be returned within 30 days after the effective date of cancellation. The cancellation will be effective even if we have not made or offered a refund.

7. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

B. The following are added and supersede any provisions to the contrary:

1. **Nonrenewal**

If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the specific reasons for nonrenewal, to the first Named Insured at least 60 days before the expiration date of the policy.

2. **Increase Of Premium**

If we increase your renewal premium, we will mail or deliver to the first Named Insured written notice of our intent to increase the premium at least 30 days before the effective date of the premium increase.

Any notice of nonrenewal or renewal premium increase will be mailed or delivered to the first Named Insured's last known address. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

ã ISO Properties, Inc., 2006

IL 09 10 07 02

# PENNSYLVANIA NOTICE

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

1. Surveys;

2. Consultation or advice; or

3. Inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

1. If the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;

2. To consultation services required to be performed under a written service contract not related to a policy of insurance; or

3. If any acts or omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gross negligence.

**Instruction to Policy Writers**

Attach the Pennsylvania Notice to all new and renewal certificates insuring risks located in Pennsylvania.

© ISO Properties, Inc., 2001

INSURED

IL N 088 09 03

# PA FRAUD STATEMENT

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

INSURED

**MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY**

## COMMERCIAL GENERAL LIABILITY Coverage Part Declarations

This Coverage Part consists of this Declarations Form, the Common Policy Conditions, the Commercial General Liability Conditions, the Coverage Form(s), and the Coverage Endorsement(s) indicated as applicable.

| | |
|---|---|
| Named Insured | Dan Borkson |
| Policy Number | MP0037004000293 |
| Effective Date: | 10/30/2014 |

### LIMITS OF INSURANCE

☒ "X" If Supplemental Declarations is attached.

| | |
|---|---|
| General Aggregate Limit (Other Than Products / Completed Operations) | $ 2,000,000 |
| Products / Completed Operations Aggregate Limit | $ 2,000,000 |
| Personal and Advertising Injury Limit | $ 1,000,000 |
| Each Occurrence Limit | $ 1,000,000 |
| Damage to Premises Rented to You Limit   (Any 1 Premises) | $ 100,000 |
| Medical Expense Limit   (Any 1 Person) | $ 5,000 |

### BUSINESS DESCRIPTION AND LOCATION OF PREMISES

#### Form of Business:

☐ Individual   ☐ Joint Venture   ☐ Partnership   ☒ Limited Liability Company   ☐ Organization (other) _____

**Business Description:** X _____

#### Location(s) of All Premises you Own, Rent or Occupy:

1) 948-948 N. 2nd Street Philadelphia, PA 19123
2) 2026 Frankford Avenue Philadelphia, PA 19125
3) 319-331 Allen Street Philadelphia, PA 19125

### CLASSIFICATION & PREMIUM PROVIDED

| | | | | Rate | | Advanced Premium | |
|---|---|---|---|---|---|---|---|
| Code No. | Classification Description | Premium Basis / Exposure* | | Premises / Operations | Products / Comp Ops | Premises / Operations | Products / Comp Ops |
| 91580 | Contractors Executive Supervisors | p | 10,400 | 4.8100 | 10.0000 | 541MP | 1,000MP |
| | Products-Completed Operations are subject to the General Aggregate Limit | | | | | | |
| 91583 | Contractors - subcontractors - one or two family | c | 2,800,000 | 2.4000 | 5.0000 | 6,720 | 14,000 |
| 49451 | Vacant Land - Other than not-for-profit | a | 5 | INCLUDED | INCLUDED | INCLUDED | INCLUDED |
| | Products-Completed Operations are subject to the General Aggregate Limit | | | | | | |

*Premium Basis Types:   **p - Payroll** (per $1,000 of Payroll)   **c - Cost** (per $1,000 Total Cost)   **s - Sales** (per $1,000 Gross Sales)
**a - Area** (per 1,000 Square feet of area)   **m - Admissions** (per 1,000 Admissions)   **u - Units** (per Unit)
**t – Total** (per each)

**Total Annual Premium:** $ 24,061

### Forms/Endorsements Applicable

See Schedule of Forms and Endorsements

**Premium Basis Definitions:**

1) "Payroll" means:
Remuneration which includes money or substitutes for money
**Payroll includes:**

    a. Commissions, bonuses, pay for holidays, vacations or periods of illness,

    b. Extra pay for overtime in accordance with the manuals in use by us,

    c. Payments by an employer or amounts otherwise required by law to be paid by employees to statutory insurance or pension plans, such as the Federal Social Security Act;

    d. Payment to employees on any basis other than time worked, such as piece work, profit sharing or incentive plans;

    e. Payment or allowance for hand tools or power tools used by hand provided by employees and used in their work or operations for the insured,

    f. The rental value of an apartment or house provided for an employee based on comparable accommodations,

    g. Value of meals and lodging other than an apartment or house received by employees as part of their pay,

    h. The value of store certificates, merchandise, credits or any other substitute for money received by employees as part their pay;

    i. The payroll of mobile equipment operators and their helpers, whether or not the operators are designated or licensed to operate automobiles. If the operators and their helpers are provided to the insured along with equipment hired under contract and their actual payroll is not known, use 1/3 of the total amount paid out by the insured for the hire or the equipment;

    j. The payroll of executive officers and individual insureds and co-partners in accordance with the manuals in use by us,

    k. Fees paid to employment agencies for temporary personnel provided to the insured.

**Payroll does not include:**

    a. Tips and other gratuities received by employees,

    b. Payments by an employer to group insurance or group pension plans for employees I in accordance with manuals in use by us;

    c. The value of special rewards for individual invention or discovery,

    d. Dismissal or severance payments except for time worked or accrued vacation;

    e. The payroll of clerical office employees,

    f. The payroll of salesmen, collectors or messengers who work principally away from the insured's premises. Salesmen, collectors or messengers are those employees engaged principally in any such duties away from the premises of the employer: Exception   This term does not apply to any employee whose duties include the delivery of any merchandise handled, treated or sold.

    g. The payroll of aircraft pilots or co-pilots if their principal duties are to work on or in connection with aircraft in either capacity.

**The rates apply per $1,000 payroll.**

2) "Cost" means:
The total cost of all work let or sublet in connection with each specific project including:

    a. The cost of all labor, materials and equipment furnished, used or delivered for use in the execution of the work, and

    b. All fees, bonuses or commissions made, paid or due.

**The rates apply per $1,000 of cost.**

3) "Sales" means:

The gross amount charged by the named insured, concessionaires or the named insured or by others trading under the insured's name for:

    1. All goods or products, sold or distributed;

    2. Operations performed during the policy period,

    3. Rentals.

**A. Gross Sales includes:**

    1. Foreign exchange discounts;

    2. Freight allowance to customers;

    3. Total sales of consigned goods and warehouse receipts;

    4. Trade or cash discounts,

    5. Bad debts, and

    6. Repossession of items sold on installments (amount actually collected).

**B. Gross Sales excludes:**

    1. Sales or excise taxes which are collected and submitted to a governmental division;

    2. Credits for repossessed merchandise and products returned Allowances for damaged and spoiled goods,

    3. Finance charges for items sold on installments;

    4. Freight charges on sales if freight is charged as a separate item on customers invoice; and

    5. Royalty income from patent rights or copyrights which are not products sales.

**The rates apply per $1,000 of gross sales.**

4) "Area" means:

The total number of square feet or floor space at the insured premises, computed as follows.

    A. For entire buildings, by multiplying the product of the horizontal dimensions of the outside of the outer building walls by the number of floors, including basements but do not use the area of the following:

        1. Courts and mezzanine types of floor openings.

        2. Portions of basements of floors where 50% or more of the area used for shop or storage for building maintenance, dwelling by building maintenance employees, heating units, power plants or air-conditioning equipment

    B. For tenants, determine the area they occupy in the same manner as for the entire building

**The rates apply per 1,000 square feet of area.**

5) "Admissions" means:
The total number of persons, other than employees of the named insured, admitted to the event insured or to events conducted on the premises whether on paid admissions, tickets, complimentary tickets or passes

**The rates apply per 1,000 admissions.**

6) "Units" means:
A single room or group of rooms intended for occupancy as separate living quarters by a family, by a group of unrelated persons living together, or by a person living alone

**The rates apply per each unit.**

7) "Total" means:
This basis of premium involves units of exposure, and the quantity comprising each unit of exposure is indicated in the declarations page, such as "per person "

**The rates apply per unit.**

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

## COMMERCIAL GENERAL LIABILITY Coverage Part Supplemental Declarations

Named Insured:     Dan Borkson

Policy Number:     MP0037004000293

Effective Date:    10/30/2014

---

## ADDITIONAL LOCATION OF PREMISES

**Location(s) of All Premises you Own, Rent or Occupy:**

4 ) 318 Richmond Street Philadelphia, PA 19125

5 ) 5105 Winchester Avenue Ventnor City, NJ 08406

    )
    )
    )
    )
    )
    )
    )
    )
    )
    )

---

## ADDITIONAL CLASSIFICATIONS & PREMIUMS PROVIDED

| | | | Rate | | Advanced Premium | |
|---|---|---|---|---|---|---|
| Code No. | Classification Description | Premium Basis / Exposure* | Premises / Operations | Products / Comp Ops | Premises / Operations | Products / Comp Ops |
| | BLANKET ADDITIONAL INSURED - SEE CG2033 | | | | 550 | |
| | BLANKET WAIVER - SEE MUS0101 20103 | | | | 550 | |
| | ADDITIONAL INSURED/ PERMITS - SEE CG2012 | | | | 100 | |

*Premium Basis Types.   **p - Payroll** (per $1,000 of Payroll)   **c - Cost** (per $1,000 Total Cost)   **s - Sales** (per $1,000 Gross Sales)
**a - Area** (per 1,000 Square feet of area)   **m - Admissions** (per 1,000 Admissions)   **u - Units** (per Unit)
**t – Total** (per each)

| **Extension of General Liability Declaration - Total Annual Premium:** | $ | 1,200 |
|---|---|---|

| **Forms/Endorsements Applicable** | See Schedule of Forms and Endorsements |
|---|---|

MUS 01 01 20002 0412            INSURED

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

## COMMERCIAL GENERAL LIABILITY Coverage Part Supplemental Declarations

Named Insured:   Dan Borkson

Policy Number:   MP0037004000293

Effective Date:   10/30/2014

### ADDITIONAL LOCATION OF PREMISES

Location(s) of All Premises you Own, Rent or Occupy:

)_____
)_____
)_____
)_____
)_____
)_____
)_____
)_____
)_____
)_____
)_____
)_____

### ADDITIONAL CLASSIFICATIONS & PREMIUMS PROVIDED

| Code No. | Classification Description | Premium Basis / Exposure* | Rate Premises / Operations | Rate Products / Comp Ops | Advanced Premium Premises / Operations | Advanced Premium Products / Comp Ops |
|---|---|---|---|---|---|---|
| | AI - BLANKET W/PRIMARY WORDING - SEE MUS0101 20102 | | | | 600 | |

*Premium Basis Types:   **p - Payroll** (per $1,000 of Payroll)   **c - Cost** (per $1,000 Total Cost)   **s - Sales** (per $1,000 Gross Sales)
**a - Area** (per 1,000 Square feet of area)   **m - Admissions** (per 1,000 Admissions)   **u - Units** (per Unit)
**t – Total** (per each)

| Extension of General Liability Declaration - Total Annual Premium: | $ | 600 |
|---|---|---|

| Forms/Endorsements Applicable | See Schedule of Forms and Endorsements |
|---|---|

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

Policy Number:   MP0037004000293

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# LIABILITY DEDUCTIBLE
## (Including Costs and Expenses)

| Coverage | Amount of Deductible | |
|---|---|---|
| Bodily Injury Liability | 1,000 | per "claim" |
| Property Damage Liability | 1,000 | per "claim" |
| Personal and Advertising Injury | | per "claim" |

A.    The Company's obligations under the coverage afforded by this policy to pay damages on behalf of the Insured apply only to the amount of damages in excess of the deductible amount stated above.

B.    The deductible amount applies to all damages sustained by one person or organization as the result of any one claim.

C.    The deductible amount stated will also apply towards investigation, adjustment and legal expenses incurred in the handling and investigation of each claim, whether or not payment is made to claimant, compromise settlement is reached or claim is denied.

D.    The terms of the policy, including those with respect to the Company's rights and duties with respect to the defense of suits and the Insured's duties in the event of an occurrence apply irrespective of the application of the deductible amount.

E.    The Company, at its sole election and option, may either:

1.    Pay any part of or all of the deductible amount to effect settlement of any claim or suit, and upon notification of the action taken, the Named Insured shall promptly reimburse the Company for such part of the deductible amount as has been paid by the Company; or

2.    Simultaneously upon receipt of notice of any claim or at any time thereafter, call upon the Insured and request said Insured to pay over and deposit with the Company all or part of the deductible amount, to be held and applied by the Company as herein provided.

All other terms and conditions of this policy remain unchanged.

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# LIMITED COVERAGE FOR CONTRACTORS AND EMPLOYEES
## (General Liability)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

A. SECTION 1 – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE, 2. Exclusions, is deleted and replaced as follows.

This insurance does not apply to:

e. Employer's Liability

"Bodily Injury" to:

(1) An "employee", "temporary worker", "leased employee", or independent contractor of the insured or any additional insured or employee of any independent contractor arising out of and in the course of:

(a) Employment by the insured or any additional insured or independent operator

(b) Performing duties related to the conduct of the insured or any additional insured's business; or

(c) Arising out of the injured party's employment; or

(2) A fellow "employee", "temporary worker", "leased employee", or independent contractor of the insured or any additional insured arising out of the course of such  employment when the insured is an "executive officer" of such employer; or

(3) The spouse, children, parent, brother or sister of that fellow "employee", "temporary worker", "leased employee", or independent contractor as a consequence of Paragraph (1) above.

This exclusion applies.

(1) Whether an insured may be liable as an employer or in any other capacity;

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury; or

(3) To any liability assumed under any contract or agreement.

B. SECTION V – DEFINITIONS, subparagraph 19. is deleted and replaced with the following:

19. "Temporary Worker" means any person who is:

(a) Furnished to you to substitute for a permanent "employee";
(b) A short-term worker; or
(c) Not an "employee" or "volunteer" worker

All other terms and conditions of this policy remain unchanged.

**MUS 01 01 20007 1013**                    INSURED                    **Page 1 of 1**

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – ROOFING OPERATIONS (OPEN ROOF)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following exclusion is added to COVERAGE A (SECTION I):

This insurance does not apply to "property damage" for roofing operations conducted by you unless the following conditions are met:

(1)     You have taken "appropriate" steps to determine any approaching adverse weather;

(2)     You have taken "appropriate" steps to provide a temporary cover for an "open roof", able to withstand the normal elements; and

(3)     The cover must  be put in place if the roof is to be left unattended for more than four hours.

The following additional definitions apply:

"appropriate" means conduct or action customarily taken or used by contractors in the same field to protect or prevent damage under similar circumstances.

"open roof" means any roof or section where the protective covering (shingles, tar, felt paper etc.) has been removed leaving exposed the underlying material, structure shell or structure interior.

All other terms and conditions of this policy remain unchanged.

**MUS 01 01 20008 1013**                               INSURED                               **Page 1 of 1**

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SPECIAL CONDITIONS - SUBCONTRACTORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following condition is added to SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITION's section of the policy:

SPECIAL CONDITIONS – SUBCONTRACTORS

You will obtain Certificates of Insurance with Limits of Insurance equal to or greater than those provided by this Policy from all subcontractors or independent contractors prior to commencement of any work performed.

Failure to comply with this Special Condition does not alter the coverage provided by this Policy. However, should you fail to comply; a premium charge will be made. The premium charge will be computed by multiplying the "total cost" of all work sublet that fails to meet the above condition, by the rate per $1,000 of payroll for the applicable classification of the work performed.

If the policy does not contain the applicable classification and rate, we will multiply our usual and customary rate per $1,000 payroll for that classification, by the net modification factor, if any, applied to the policy rates.

"Total cost" means the cost of all labor, materials, and equipment furnished, used or delivered for use in the execution of the work, and all fees, bonuses or commissions paid.

All other terms and conditions of this policy remain unchanged.

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# OVERSPRAY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
FARM LIABILITY COVERAGE FORM

In consideration of the premium charged, it is understood and agreed that this insurance does not apply to "property damage" caused by over spray of paint, foam or other toxic or hazardous material(s).

All other terms and conditions of this policy remain unchanged.

**MUS 01 01 20026 1013**                    INSURED                    **Page 1 of 1**

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

Policy Number: MP0037004000293

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – PRIOR COMPLETED OR ABANDONED WORK

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following exclusion is added to Paragraph **2.**, **Exclusions, SECTION 1 –**
**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY AND**
**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY:**

I.   This insurance does not apply to:

"Bodily injury", "property damage" or "personal and advertising injury" arising out of or in any way related to "your work" completed or abandoned prior to the earlier of the following:

A.   The inception date of the policy to which this endorsement is attached; or

B.   The inception date of an earlier policy (or policies) with us, if all prior policies with us were maintained without a lapse in coverage, and all remained in-force with us without interruption.

All other terms and conditions of this policy remain unchanged.

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NEW RESIDENTIAL CONSTRUCTION LIMITATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

I.  This insurance does not apply to "Bodily injury", "Property damage", "Personal and advertising injury", or any other injury, loss or damage in any way connected with or arising out of "new residential construction" of any of the following:

  A.  "apartment" or "apartment building";

  B.  "condominium" or "cooperative";

  C.  "town house"; or

  D.  "single family house"

  whether such "New Residential Construction" is or was  performed by an "Insured", a person or entity to whom an "Insured" owes an indemnity obligation has agreed to indemnify or hold harmless, a person or entity to whom an "Insured" is contractually obligated to add to this policy as an "Additional Insured," or any other person or entity.

  This exclusion does not apply to new construction if the total number of "new residential construction" within a "development" does not exceed (10) individual units of "new residential construction".

  This exclusion also does not apply to remodeling, repair or maintenance operations performed on any individual "apartment", "condominium", "town house", "single family house" or any other residential unit after it has been certified for occupancy or put to its intended use.

II. For purposes of this endorsement, the following are added to **Section V – DEFINITIONS:** of the Policy:

  A.  "Apartment" means a self-contained single dwelling unit designed for human habitation having a separate mailing address located in a building containing two or more self-contained single dwelling units designed for human habitation each having a separate mailing address.

  B.  "Apartment Building" means a structure or structures containing two or more separate "Apartments," together with any common areas and appurtenant structures thereto.

  C.  "Condominium" means an undivided interest in common property within a multi-unit residential real property coupled with a separate interest in space comprising a unit. "Condominium" shall include any individual unit, any model homes, any common areas and all appurtenant structures thereto.

  D   "Cooperative" means a building with "apartments" owned by a corporation of tenants in which shares of expenses are calculated on the basis of the value of the tenant's "apartment". "Cooperative" includes both the "apartment" unit itself and any common areas of the building and all appurtenant structures thereto.

E. "Development" means a group of single-family or multiple-family dwellings, including" apartments", condominiums", "single family houses" or "town houses", built as a single construction project

F. "New residential construction" means operations relating to construction of a building, multiple buildings, building unit or multiple building units, not previously occupied, and designed or intended for occupancy in whole or in part as a residence by a person, and shall include the land upon which such building(s) or building unit(s) is/are situated and any appurtenant structures thereto.

G. "Single family house" means a separate, free-standing house designed to be occupied by one family and any appurtenant structures thereto.

H. "Town house" means a "condominium," "cooperative" or "single family house" built in a row with other residential homes of the same or similar design with either a wall in common with another unit or a narrow space between units, together with any common areas, model homes and appurtenant structures thereto. "Town house" shall include row houses or row homes.

All other terms and conditions of this policy remain unchanged.